UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGE VASQUEZ,<br><br>          Plaintiff,<br><br>    v.<br><br>WASHINGTON DEPARTMENT OF VETERANS AFFAIRS,<br><br>          Defendant. | Case No. 3:23-cv-06178-TMC<br><br>ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND |

## I.    INTRODUCTION

Pro se Plaintiff George Vasquez worked for Defendant Washington State Department of Veterans Affairs (DVA) for about seven months before he was fired. Mr. Vasquez, a veteran living with several disabilities, alleges that DVA violated his civil rights when they fired him. In his complaint, Mr. Vasquez alleged age, national origin, and disability discrimination. This Court previously granted DVA's motion to dismiss nearly all of Mr. Vasquez's claims but denied the motion as to one of his disability-based claims, which it construed as arising under Section 504 of the Rehabilitation Act. Dkt. 27.

DVA then moved to dismiss this final claim. Dkt. 29. DVA argues that Mr. Vasquez cannot bring a Section 504 claim against the agency because that section of the Rehabilitation Act does not allow employment claims. This argument is incorrect and misstates decades of

precedent. But because Mr. Vasquez's current complaint does not allege that DVA receives federal funding, the Court must still grant the motion to dismiss. Mr. Vasquez can easily cure this defect, however, by filing an amended complaint. The Court thus GRANTS Defendant DVA's motion to dismiss and GRANTS Mr. Vasquez leave to amend. Mr. Vasquez must file his amended complaint no later than December 31, 2024. If he does not file an amended complaint by that date, the Court will dismiss his Section 504 claim without prejudice and close the case.

## II.   BACKGROUND

George Vasquez worked as an "IT service desk worker" with the Washington State Department of Veterans Affairs (DVA) from May 16, 2022, until DVA terminated his employment on November 14, 2022. Dkt. 7-1 at 2, 4. Mr. Vasquez is a veteran living with post-traumatic stress disorder (PTSD).[1] *Id.* Mr. Vasquez alleges that he was initially hired to work a shift from 4:00 to 8:00 a.m., but, instead, he was scheduled to work from 8:00 a.m. to 12:00 p.m. *Id.* at 2. Working this shift, he experienced increasing stress and anxiety. *Id.* The stress was largely induced by a coworker who would "often interrupt and startle plaintiff while speaking to clients in cubicle . . . [and] take on a leadership role, telling plaintiff what their expectations were for the office." *Id.* Mr. Vasquez claims the coworker's "tone was bullying, demeaning, and aggressive." *Id.* And he maintains that he regularly reported the issues to supervisors who failed to conduct appropriate oversight, "foster[ing] a distracting and hostile work environment." *Id.*

Mr. Vasquez continued to request that he be moved to the earlier shift, "as this would put [him] in a more relaxing and stress-free work environment." *Id.* at 2–3. Mr. Vasquez explained that "the current work environment" was harming "his psychological well-being." *Id.* at 3. He

---

[1] Mr. Vasquez also alleges that his service-connected disabilities include "depressive disorder, and cognitive disorder with memory loss (adjustment disorder, personality disorder, and residuals of stroke), residual pituitary tumor, tinnitus, lumbar strain, impairment of visual field." Dkt. 7-1 at 6.

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 2

alleges that his "[s]upervisor was told again about his PTSD disability and the pervasive emotional reactions plaintiff was experiencing from the current work environment." *Id.* But the "[s]upervisor did not respond to plaintiff's concerns and did not address or remedy confrontational coworkers continuous bullying." *Id.* No action was ever taken. *Id.*

Mr. Vasquez further alleges that he was prevented from participating in trainings and was not given recognition when he did complete necessary certifications. *Id.* at 3–4. The exclusion from these trainings was "detrimental to plaintiff's sense of belonging" in the workplace. *Id.* at 3.

On November 3, 2022, Mr. Vasquez requested help in pursuing an accommodation from human resources. *Id.* On November 9, he formally sent a request for a reasonable accommodation to his supervisor and the human resources team. *Id.* at 4. The request "outlin[ed] the effects the current work environment was having on [his] disability." *Id.* Less than a week later, on November 14, Mr. Vasquez was fired for "not being a good fit." *Id.*

Based on these allegations, Mr. Vasquez brought discrimination and retaliation claims (for firing and creating a hostile work environment under Title VII of the Civil Rights Act of 1964; failing to provide a reasonable accommodation under Section 501 of the Rehabilitation Act of 1973; discrimination under Section 501; creating a hostile work environment under the Rehabilitation Act; age discrimination under the Age Discrimination in Employment Act (ADEA); discrimination under the Americans with Disabilities Act (ADA); and national origin discrimination under Title VII). *See id.* at 6–14. The DVA filed two motions to dismiss Mr. Vasquez's complaint. *See generally* Dkt. 12; Dkt. 16.

On August 22, 2024, this Court granted in part and denied in part DVA's motions to dismiss. *See generally* Dkt. 27. The Court dismissed Mr. Vasquez's ADA, ADEA, Section 501, Title VII retaliation, and Title VII national origin discrimination claims with prejudice and without leave to amend. *See generally id.* However, the Court construed his hostile work

environment Rehabilitation Act claim as arising under Section 504 of the Act and declined to dismiss it. *Id.* at 8. DVA then filed a third motion to dismiss. Dkt. 29. DVA argues that Mr. Vasquez's hostile work environment claim should be dismissed because Section 504 cannot be used to bring a discrimination claim against an employer, as employment is not a "benefit or service" within the language of the statute. *See id.* at 4.

Mr. Vasquez responded to DVA's motion, Dkt. 33; DVA replied, Dkt. 34; and Mr. Vasquez submitted a surreply, Dkt. 35. The motion is fully briefed and ripe for the Court's consideration.

### III.    DISCUSSION

**A.    Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 4

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B.    Plaintiff can bring a hostile work environment claim under Section 504.**

   *1.    Section 504 encompasses employment-related claims.*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. 794(a). Congress enacted the first version of Section 504 in 1973. Section 504's purpose is to ensure that disabled individuals "are not denied jobs or other benefits because of prejudiced attitudes or the ignorance of others." *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 284 (1987). Section 504 was passed alongside Section 501, which expressly protects individuals with disabilities in federal employment. *Buckingham v. United States*, 998 F.2d 735, 739 (9th Cir. 1993) ("The duty on [federal] employers thus goes beyond mere non discrimination; the regulations promulgated under section 501 emphasize the affirmative obligation to accommodate . . ."). Together, the two provisions offer protection to employees of entities that receive federal financial assistance and entities within the federal government itself. *See, e.g.*, *Womanchild v. Nicholson*, No. C06-1823RAJ,

2008 WL 714091, at *3 (W.D. Wash. Mar. 13, 2008) (discussing the differences in applicability of Section 501 and Section 504); *Sharpe v. Henderson*, No. CV-00-71-ST, 2001 WL 34039485, at *6 (D. Or. Oct. 19, 2001) (explaining the comprehensive coverage of the two statutes for employment cases).

Importantly, Section 504 applies only to those entities receiving federal funds. *Arline*, 480 U.S. at 277; *see also United States Dep't of Trans. v. Paralyzed Veterans of Amer.*, 477 U.S. 597, 605 (1986). Thus, a plaintiff suing under Section 504 must show that (1) he is an individual with a disability; (2) he otherwise qualifies to receive the benefit; (3) he was denied the benefits solely by reason of his disability; and (4) the program receives federal funding. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

In its third motion to dismiss, DVA does not question the severity or pervasiveness of the harassment Mr. Vasquez alleges he suffered. *See* Dkt. 29. Instead, DVA narrowly argues that the complaint fails to assert a plausible claim because employment actions are not cognizable under Section 504.[2] *Id.* at 3–4. DVA claims that Mr. Vasquez has "failed to allege that he was qualified for a particular benefit or service in the first place" because Section 504 bars "discrimination, on the basis of disability, in federally-funded programs, not as to governmental employment." Dkt. 29 at 4. This argument is unavailing.

In *Consolidated Rail Corporation v. Darrone*, 465 U.S. 624, 632 (1984), the Supreme Court recognized that one of the key purposes of Section 504 was "enhancing employment of the

---

[2] DVA raises additional arguments in its reply brief. *See* Dkt. 34 at 2–3. When moving to dismiss under Rule 12(b)(6), a defendant must include all arguments supporting dismissal in the initial motion. "It is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). The Court declines to consider those arguments here. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

handicapped." The Court explained, "the language of § 504 suggests that its bar on employment discrimination should not be limited to programs that receive federal aid the primary purpose of which is to promote employment." *Id.* at 632–33. The Court found that the legislative and administrative history of the law affirmed that Section 504 was intended "to prohibit employment discrimination by all recipients of federal financial aid, regardless of the primary objective of that aid." *Id.* at 634. The Court declined to hold that the main purpose of the federal funds needed to be promoting employment. *Id.* at 636–37. The Court concluded "that respondent may recover backpay due to her decedent under [Section] 504 and that this suit for employment discrimination may be maintained even if petitioner receives no federal aid the primary purpose of which is to promote employment." *Id.* at 637.

*Darrone* does not stand alone. In *School Board of Nassau County v. Arline*, the Court again held that "[a]llowing discrimination based on [disability] would be inconsistent with the basic purpose of [Section] 504, which is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or the ignorance of others." 480 U.S. at 284. In *Arline*, the Court considered whether someone with a contagious illness could be considered disabled and entitled to the protections of Section 504. *Id.* at 276. The Court ultimately held that Section 504 covered such a case. In doing so, the Court analyzed the 1978 amendments to Section 504. The Court noted that Congress had amended the law to recognize that "employers . . . might have legitimate reasons not to extend jobs or benefits to drug addicts and alcoholics, but [Congress] also understood the danger of improper discrimination against such individuals if they were categorically excluded from coverage under the Act." *Id.* at 285 n. 14. In doing so, Congress, and the Court, again recognized that Section 504 covers disability-based employment discrimination.

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 7

In the years since *Darrone* and *Arline*, courts have continuously maintained that Section 504 covers disability-based employment discrimination. *See, e.g.*, *Smith v. Barton*, 914 F.2d 1330, 1339 (9th Cir. 1990) (citing B.L. Schlei & P. Grossman, Employment Discrimination Law 281 (2d ed. 1983) ("Most section 504 suits are brought by plaintiffs who have been denied a job or some other benefit as a consequence of a classification or disqualification based on disability or perceived disability."); *Meyerson v. State of Ariz.*, 740 F.2d 684 (9th Cir. 1984) (relying on *Darrone* to find that university professor plaintiff could maintain a Section 504 discrimination suit against university even if federal financial assistance did not have the primary objective of providing employment); *Rose v. U.S. Postal Serv.*, 774 F.2d 1355, 1363 (9th Cir. 1985) ("The thrust of the Rehabilitation Act is to require access for handicapped persons to employment and federal programs.").

In *Zimmerman v. Oregon Department of Justice*, 170 F.3d 1169, 1171–72 (9th Cir. 1999), the Ninth Circuit addressed an ADA Title II employment claim. In determining that the claim could not move forward under Title II of the ADA, the Court explained that the substantive employment protections of Section 504 had not been imputed to Title II. *Id.* at 1179–80. In doing so, the Court explained that Section 504 does offer protections against disability-based workplace discrimination. *Id.*

A decade later, the Ninth Circuit extended Section 504's protections to independent contractors seeking relief for disability-based workplace discrimination. *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 939–42 (9th Cir. 2009) ("Section 504 creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance . . . including employment discrimination in such programs[.]") (cleaned up). Looking to *Zimmerman*, the Court explained: "As we observed there, under the Rehabilitation Act, '[d]iscrimination is prohibited under any program or activity that receives such [Federal

financial] assistance. This focus naturally encompasses the entire operation of the program or activity, for its federal funding may well flow into compensation for employees,' and, we would add, for independent contractors as well." *Id.* at 942 (quoting *Zimmerman*, 170 F.3d at 1181).

District courts in the Ninth Circuit, including this one, have followed suit. *See, e.g.*, *Robinson v. Green River Cmty. Coll.*, No. C 10-0112-MAT, 2010 WL 3947493, at *3 (W.D. Wash. Oct. 7, 2010) (granting summary judgment on Section 504 claim for employment discrimination); *Aki v. Univ. of California Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1175 (N.D. Cal. 2014) (allowing Section 504 failure to accommodate claim to proceed against state employer); *Quinones v. Potter*, 661 F. Supp. 2d 1105, 1118 (D. Ariz. 2009) (considering Section 504 failure to accommodate claim against United States Postal Service, the only federal agency covered by 504, rather than 501); *Ham v. State of Nev.*, 788 F. Supp. 455, 457 (D. Nev. 1992) (denying summary judgment on Section 504 claim based on employment discrimination).

DVA identifies no cases that hold to the contrary. *See* Dkt. 29 at 3–4. Rather, DVA argues—without citation to any relevant authority—that only Section 501 prohibits discrimination based on disability in employment and Section 501, being limited to federal government employment, does not apply here. *Id.* at 3. The Court agreed with the second half of this argument as it was raised in DVA's first motions to dismiss. Dkt. 27 at 7. But, considering the cases discussed above, the Court does not agree with DVA's argument about the bounds of the Rehabilitation Act. Both Section 501 and Section 504 prohibit discrimination based on employment. *Buckingham*, 998 F.2d at 739; *Fleming*, 587 F.3d at 939–42. Section 501 is limited to federal government employment. *Johnston v. Horne*, 875 F.2d 1415, 1418–1420 (9th Cir. 1989). Section 504 is not. *Id.*; *see also Darrone*, 465 U.S. at 626.

Thus, DVA's argument that Mr. Vasquez cannot bring a claim for employment discrimination under Section 504 fails. And given DVA's failure to disclose or acknowledge

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 9

binding Supreme Court and Ninth Circuit precedent foreclosing its argument, the Court cautions counsel for DVA to review their obligations under Federal Rule of Civil Procedure 11(b)(2).

   2.  *The Rehabilitation Act of 1973 allows for hostile work environment claims.*

  Mr. Vasquez's existing claim under Section 504 alleges that DVA created a hostile work environment. Dkt. 7-1 at 12–14; Dkt. 27 at 8. Recent Ninth Circuit precedent has clarified that not only does the Rehabilitation Act allow employment related claims, it also specifically allows hostile work environment claims. *Mattioda v. Nelson*, 98 F.4th 1164, 1173–74 (9th Cir. 2024). In *Mattioda*, the Ninth Circuit held that a hostile work environment claim is cognizable under both the ADA and Section 501 of the Rehabilitation Act. *Id.* The Ninth Circuit joined several other circuits who had already held the same. *Id.* (collecting cases). The Ninth Circuit thus "join[ed] the weight of consensus in holding that a disability-based harassment claim is available under the ADA and the Rehabilitation Act." *Id.* at 1173. Though *Mattioda* is a case brought under Section 501, rather than Section 504, of the Rehabilitation Act, the Court fails to distinguish between the two throughout the opinion and in its holding. *Id.* ("[W]e . . . hold that hostile-work-environment claims are cognizable under the Rehabilitation Act." (cleaned up).

  Since *Mattioda* was decided, district courts in the Ninth Circuit have applied its holding to Section 504 and ADA Title II claims.[3] *See, e.g.*, *James Andrew Lawrence, Jr. v. Star Protection Agency LLC*, No. 23-35234, 2024 WL 4707888, at *1 (9th Cir. Nov. 7, 2024) (citing

---

[3] Although Title II does not cover employment, *see Zimmerman*, 170 F.3d 1169, Section 504 and Title II of the ADA are otherwise analogous and often treated nearly identically by courts. *See, e.g.*, *Duvall*, 260 F.3d at 1135 ("Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act."); *Zukle v. Regents of Univ. of Cali.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citing cases from various circuits holding that the two provisions are to be interpreted coextensively); *Reidy v. Cent. Puget Sound Transit Reg'l Auth.*, No. C13-536RSL, 2014 WL 7340373, at *3 (W.D. Wash. Dec. 22, 2014) ("There is no significant difference in the analysis of rights and obligations created by Title II of the ADA and Section 504 of the Rehabilitation Act, and they may be interpreted and applied together.") (citations omitted).

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 10

*Mattioda* to hold that the ADA allows hostile work environment claims); *Brown v. Wormuth*, No. CV-21-00477-TUC-RM (MSA), 2024 WL 3553112, at *8 (D. Ariz. July 26, 2024), report and recommendation adopted, No. CV-21-00477-TUC-RM (MSA), 2024 WL 4347864 (D. Ariz. Sept. 30, 2024) (citing *Mattioda* in determining that plaintiff could allege a Section 504 claim); *Feroz v. Commex Corp.*, No. 3:23-CV-05592-LB, 2024 WL 3643087, at *7 (N.D. Cal. July 31, 2024) (allowing plaintiff to make a supplemental filing describing her disability and how a hostile work environment "resulted from her disability" to plead a Section 504 claim).

For example, in *Fox v. MHM Health Pros. LLC*, the District of Arizona denied defendants' motion to dismiss when the plaintiff alleged a hostile work environment under a comparable section of the ADA. No. CV-23-00190-PHX-DWL, 2024 WL 4364133, at *18–22 (D. Ariz. Sept. 30, 2024). The complaint alleged that the plaintiff's colleagues gossiped about the plaintiff, spreading inaccurate information about her disability (PTSD), and claimed that the plaintiff was not suitable for the job because of her PTSD. *Id.* at *21. The Court, citing to *Mattioda*, held that "[t]hese additional details are sufficient to establish, at least at the pleading stage, that the complained-of acts of harassment were linked to Plaintiff's disability." *Id.*

The Court thus declines to adopt DVA's argument that Mr. Vasquez cannot raise a hostile work environment claim under Section 504. The broader case law on Section 504, coupled with the Ninth Circuit's recent holding in *Mattioda*, indicate that Mr. Vasquez may maintain a Section 504 claim against DVA for creating a hostile work environment.

    3.    *The Eleventh Amendment does not shield WDVA from liability from a Section 504 hostile work environment claim.*

Even if Mr. Vasquez may bring a Section 504 claim for a hostile work environment, the Eleventh Amendment may still offer DVA a shield. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment "bars a citizen from bringing a suit against their own state in federal court." *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "This immunity extends not just to suits in which the state itself is a named party but also to those against" state entities, such as agencies, that are considered "arm[s] of the [s]tate." *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1026 (9th Cir. 2023) (en banc) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). As to states and state agencies, "[t]his jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), superseded by statute on other grounds.

A plaintiff can overcome the Eleventh Amendment bar, however, if the state has consented to waive its immunity or if Congress has abrogated the state's immunity. *Tron-Haukebo v. Wash. State DOT*, No. C23-5691JLR, 2023 WL 7183573, at *2 (W.D. Wash. Nov. 1, 2023) (citing *Micomonaco*, 45 F.3d at 319).

First, this Court concluded in its order on DVA's first two motions to dismiss that DVA is an arm of the state. Dkt. 27 at 5–6. Second, Section 504 does abrogate Eleventh Amendment immunity for state agencies, but the abrogation applies only when the state agency accepts federal financial assistance. *Lane v. Peña*, 518 U.S. 187, 193–94 (1996); *Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir. 2002). If DVA receives financial assistance, then Eleventh Amendment immunity is abrogated for Vasquez's claim.

But Mr. Vasquez has not alleged that DVA receives federal financial assistance.[4] *See generally* Dkt. 7-1. Mr. Vasquez's complaint does not mention that DVA receives federal

---

[4] Mr. Vasquez does contend in his opposition to DVA's motion to dismiss that DVA receives federal funding. Dkt. 33 at 3. But a Rule 12(b)(6) motion challenges the sufficiency of the

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 12

funding. *See generally id.* At this stage, he need not provide actual evidence of DVA's federal funding, but the complaint "must allege sufficient facts to state the elements of a hostile work environment claim." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (first citing *Twombly*, 127 S.Ct. at 1974; and then citing *Williams v. Boeing* Co., 517 F.3d 1120, 1130 (9th Cir. 2008)). Without the federal funding allegation, Mr. Vasquez has not pled sufficient facts to abrogate DVA's immunity and state the elements of a hostile work environment claim under Section 504.

Still, this error may be remedied. As Mr. Vasquez has shown in his opposition briefing, he can plausibly allege that DVA receives federal financial assistance. Dkt. 33 at 3 ("The WDVA is a state agency that receives federal funds, falling under section 504 of the Rehabilitation Act of 1973, which prohibits discrimination based on disability."). The Ninth Circuit has long held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). Mr. Vasquez may easily remedy this error by submitting an amended complaint.

## IV.    CONCLUSION

For the reasons explained above, DVA's Third Motion to Dismiss is GRANTED and Mr. Vasquez's complaint is DISMISSED without prejudice. Mr. Vasquez is GRANTED leave to amend. Mr. Vasquez must file an amended complaint no later than December 31, 2024.

---

complaint as it exists when the motion is filed. The plaintiff thus cannot use opposition briefs to introduce entirely new factual allegations. *See, e.g.*, *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted). Instead, Mr. Vasquez must add this allegation if he chooses to amend his complaint.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 4th day of December, 2024.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND - 14