UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGE VASQUEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON DEPARTMENT OF<br><br>VETERANS AFFAIRS,<br><br>　　　　Defendant. | Case No. 3:23-cv-06178-TMC<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Pro se Plaintiff George Vasquez worked for Defendant Washington State Department of Veterans Affairs ("DVA") for about seven months before he was fired. Mr. Vasquez, a veteran living with several disabilities, alleges that DVA fired him because he made a request for a reasonable accommodation after a coworker created a hostile work environment. Mr. Vasquez brings these claims under Section 504 of the Rehabilitation Act.

DVA has now moved for summary judgment, arguing that Mr. Vasquez has failed to show facts from which a jury could find a hostile work environment related to his disability or that his firing was in retaliation for his accommodation request. Mr. Vasquez responded, arguing that he has offered sufficient evidence to raise a question of material fact on these claims.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

Accordingly, Mr. Vasquez requests that the Court deny the motion and allow the case to proceed to trial.

Because Mr. Vasquez has not put forth evidence from which a reasonable jury could find in his favor, the Court GRANTS the motion for summary judgment, Dkt. 39, and DISMISSES the case with prejudice.

## II.    BACKGROUND

The following background facts are either undisputed or viewed in the light most favorable to Mr. Vasquez, the non-moving party. Additional material facts for each claim brought by Mr. Vasquez are discussed in the sections corresponding to those claims.

George Vasquez is a veteran living with post-traumatic stress disorder (PTSD).[1] Dkt. 7-1 at 2, 4. Mr. Vasquez worked as an "IT service desk worker" with the Washington State Department of Veterans Affairs (DVA) from May 16, 2022, until DVA terminated his employment on November 14, 2022. *Id.*; Dkt. 41 ¶ 3; Dkt. 40-1 at 6. In this role, Mr. Vasquez offered "customer support for computers and IT items for DVA employees[.]" Dkt. 40-1 at 11.

Mr. Vasquez was hired to work a morning shift from 4:30 to 8:30 a.m. *Id.* at 12. But Mr. Vasquez's position at DVA began with a six-month probationary period. Dkt. 41 ¶ 3. During the probationary period, he had to work a "part time day time shift so that he could properly be trained in DVA IT service desk procedures." *Id.*

---

[1] Mr. Vasquez also alleges that his service-connected disabilities include "depressive disorder, and cognitive disorder with memory loss (adjustment disorder, personality disorder, and residuals of stroke), residual pituitary tumor, tinnitus, lumbar strain, impairment of visual field." Dkt. 7-1 at 6.

Mr. Vasquez's supervisor, Jason Anderson, Dkt. 40-1 at 10, appointed Kimberley Danley[2] to be the "lead trainer" for Vasquez and another employee hired with him, Jeremy Douglas. Dkt. 41 ¶ 3; Dkt. 42 ¶ 5. Danley had started about six months before Mr. Vasquez. Dkt. 41 ¶ 2. Mr. Vasquez believed Danley was not a supervisor, but rather a "peer," the "exact same [type of] computer technician" as he was. Dkt. 40-1 at 19.

Mr. Vasquez found working with Danley to be a challenge. *See, e.g.*, *id.* at 12–13, 23, 27. Mr. Vasquez told Anderson that he viewed Danley's actions towards him, "including interrupting him when he was on the phone with customers, as being 'unprofessional[.]'" Dkt. 41 ¶ 10. For example, Mr. Vasquez told Anderson that Danley would stand over him and Douglas, correcting them repeatedly and "aggressive[ly]." Dkt. 40-1 at 26. Mr. Vasquez felt that Danley was "trying to assert her dominance." *Id.* Mr. Vasquez brought his concerns to Anderson, but felt they were "brushed aside." *Id.* at 27. Anderson instructed Danley to sit next to Vasquez, "so that she could be at the same level as him, when attempting to assist and train him." Dkt. 41 ¶ 11; Dkt. 42 ¶ 8. But Mr. Vasquez felt the issue remained unresolved. Dkt. 40-1 at 28. He explained that Danley would "sit there and tell [him] what to do every opportunity she had." *Id.*

The situation did not improve. Mr. Vasquez testified that the environment was "emotionally toxic." *Id.* at 29. He explained that it "started affecting [his] sleep," placing a new type of "mental stress" on him. *Id.* at 30. On November 4, 2022, Mr. Vasquez emailed Jodi McCauley, a Human Resources Consultant with DVA, Dkt. 43 ¶ 2, to request information about submitting a reasonable accommodation request. Dkt. 43-1 at 2. He hoped to work the shift he had originally been hired for, so that he would no longer be forced to work with Danley. Dkt. 46-

---

[2] Danley is sometimes referred to as Kimberley Johnsen in the record. *See, e.g.*, *id.*; Dkt. 40-1 at 15. Danley changed her last name from Johnsen to Danley. Dkt. 42 ¶ 1.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

4 at 1. McCauley emailed back on November 7, apologizing for the delay, and asking for more information about the kind of request Mr. Vasquez hoped to make. Dkt. 46-3 at 1.

On November 8, Anderson emailed McCauley with a separation request for Mr. Vasquez. Anderson explained that he had "determined [Mr. Vasquez] is not a fit to our Service Desk." Dkt. 41-2 at 2. His email explained that Mr. Vasquez "has been making negative comments about other IT staff and that we do not need them because [he] does not understand what they do." *Id.* Anderson also noted that Mr. Vasquez "refuse[d] to work with some of his coworkers because he did not like some interactions with them[.]" *Id.* Anderson set Mr. Vasquez's date of separation for November 14, 2022. *Id.* There is no evidence in the record that shows, or from which a jury could reasonably infer, that Anderson knew Mr. Vasquez had reached out to HR with questions about the reasonable accommodation process before Anderson sent his separation request.

On the morning of November 9, Mr. Vasquez formally sent a request for a reasonable accommodation to Anderson and McCauley. Dkt. 40-1 at 4, 15. Mr. Vasquez wanted to "work the hours that [he] was hired to do" so that he could remove himself from "the hostile work environment that [Danley] had made in the office[.]" *Id.* at 12. He attached to the request a letter to Anderson dated November 8. *Id.* at 5. Vasquez clarified that he wrote the letter on November 8 but sent it the morning of November 9. *Id.* at 16.

But the accommodations request was never completed. Based on Anderson's earlier request, Mr. Vasquez was officially separated from his probationary appointment on November 14, 2022. Dkt. 40-1 at 6.

Mr. Vasquez filed this case on December 21, 2023. Dkt. 1. Mr. Vasquez brought discrimination and retaliation claims (for firing and creating a hostile work environment under Title VII of the Civil Rights Act of 1964); failing to provide a reasonable accommodation under

Section 501 of the Rehabilitation Act of 1973; discrimination under Section 501; creating a hostile work environment under the Rehabilitation Act; age discrimination under the Age Discrimination in Employment Act (ADEA); discrimination under the Americans with Disabilities Act (ADA); and national origin discrimination under Title VII. Dkt. 7-1 at 6–16. DVA filed two motions to dismiss Mr. Vasquez's complaint. *See generally* Dkt. 12; Dkt. 16.

On August 22, 2024, this Court granted in part and denied in part DVA's motions to dismiss. *See generally* Dkt. 27. The Court dismissed Mr. Vasquez's ADA, ADEA, Section 501, Title VII retaliation, and Title VII national origin discrimination claims with prejudice and without leave to amend. *See generally id.* However, the Court construed his hostile work environment claim as arising under Section 504 of the Rehabilitation Act and declined to dismiss it. *Id.* at 8. DVA then filed a third motion to dismiss. Dkt. 29. The Court granted the motion because Mr. Vasquez had not alleged that DVA received federal funding. Dkt. 36 at 2. But, the Court noted, Mr. Vasquez could easily remedy this error and granted him leave to amend his complaint. *Id.* Mr. Vasquez cured that defect through his second amended complaint. Dkt. 37.

On May 23, 2025, DVA moved for summary judgment on this remaining claim. Dkt. 39. Mr. Vasquez responded, Dkt. 46, and DVA replied. Dkt. 47. Mr. Vasquez moved for leave to file a surreply, Dkt. 48, which the Court granted. Dkt. 49. Mr. Vasquez filed his surreply on June 23, 2025. Dkt. 50. The motion is ripe, and the briefing is now complete.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be presumed. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Generally, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Consequently, in ruling on a motion for summary judgment, "a District Court must resolve any factual issues of controversy in favor of the non-moving party . . . ." *Lujan,* 497 U.S. at 888 (internal quotations omitted).

### IV. DISCUSSION

Mr. Vasquez's remaining claims arise under Section 504 of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Mr. Vasquez's second amended

complaint (SAC) alleges both a claim for hostile work environment and a claim for retaliation for engaging in protected activity. Dkt. 37 ¶¶ 50–74.[3] The Court takes each claim in turn.

## A. Claim for Hostile Work Environment

To survive summary judgment on a hostile work environment claim, a plaintiff must show: "(1) that he was subjected to verbal or physical conduct related to a protected characteristic; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

"To determine whether conduct was sufficiently severe or pervasive . . ., we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Simpson v. DeJoy*, 641 F. Supp. 3d 772, 792 (D. Ariz. 2022) (quoting *Vasquez*, 239 F.3d at 642). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Mattioda v. Nelson*, 98 F.4th 1164, 1175–76 (9th Cir. 2024) (citation omitted). "The conduct must be both subjectively and objectively abusive." *Id.* at 1176 (citation omitted). Thus, "isolated incidents (unless extremely serious) are not sufficient to create an actionable claim." *Id.*[4]

---

[3] Mr. Vasquez's SAC contains several other claims. *See id.* 8–13, 18–19. These claims were dismissed in a prior order. *See generally* Dkt. 27. Only Mr. Vasquez's Section 504 claims remain.

[4] The Court cites cases considering hostile work environment claims under both the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act because the standards are essentially the same. *See, e.g.*, *Boose v. Tri–County Metro. Transp. Dist. of Oregon*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("Because the ADA was modeled on section 504 of the Rehabilitation Act,

"Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics." *Simpson*, 641 F. Supp. 3d at 792 (quoting *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (1995)). "Key factors in determining whether a work environment is hostile include: the frequency of the conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, as opposed to a mere utterance; and whether the conduct unreasonably interferes with an employee's work performance." *Harris v. Forklift*, 510 U.S. 17, 23 (1993).

As explained briefly above, the moving party—here, DVA—has the initial burden of showing that there is an absence of evidence of support for the nonmoving party's case. *Celotex*, 477 U.S. at 325. If the moving party meets that burden, the non-moving party—Mr. Vasquez— must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (If a moving party "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense.") (citing cases). If the non-moving party cannot set forth specific facts on an essential element of their claim, then the claim must be dismissed. *Id.*

Here, DVA has met its initial burden of showing that there is no evidence that Danley's actions toward Mr. Vasquez, however problematic, were undertaken because of his disability. Mr. Vasquez describes Danley's behavior as "bullying," "assert[ing] her dominance," and being unnecessarily "assertive." Dkt. 40-1 at 26–27. He claims that she "would grab the phone out of

---

'courts have applied the same analysis to claims brought under both statutes.'")); *see also Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (noting that cases interpreting the ADA and the Rehabilitation Act are "interchangeable").

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8

[his] hand" if he was not following instructions. *Id.* at 30. The constant yelling "mentally disturbed" him, and he described her behavior as an utter lack of "professionalism." *Id.* at 31.

But, as DVA notes, Mr. Vasquez never describes any behavior that might show that he suffered this treatment "because of" his disability. *See Bruce v. Becerra*, No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867, at *3 (S.D. Cal. May 13, 2025) ("Plaintiff has failed to set forth plausible allegations that he suffered discrimination or harassment 'because of' a disability."). The first prong of the hostile work environment test requires that Mr. Vasquez show that he was subjected to verbal or physical conduct related to his disability. *See Vasquez*, 349 F.3d at 642; *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (similar). DVA points out that Mr. Vasquez admits that Danley did not "subject him to name calling or insults or other conduct based on his disability."[5] Dkt. 39 at 13.

DVA has met its initial burden to point out the absence of evidence that Danley's actions were because of Mr. Vasquez's disability. Consequently, Mr. Vasquez must produce evidence to support his claim. *See Nissan*, 210 F.3d at 1103.

But Mr. Vasquez has not offered any evidence that Danley's actions were because of or related to his disability. Throughout his deposition testimony, he never once states that Danley knew of his disability, mentioned his disability when berating him, or singled him out for hostile conduct compared to peers without a disability. *See* Dkt. 40-1 at 8–39. She may have been constantly "in [his] face" and "yelling" at him. *Id.* at 31. She also may have yelled at him while

---

[5] DVA argues that the lack of "name calling or insults" based on Mr. Vasquez's disability is conclusive here. Dkt. 39 at 13. That is incorrect. A work environment has crossed the threshold if "hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). This does not mean that an individual must show that a coworker used slurs. *See id.* A broader scope of hostile conduct may meet this standard if it is tied to the plaintiff's protected characteristic and is severe or pervasive.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

on the phone and acted in an "insulting" manner. *Id.* at 32. But, even taking these facts in the light most favorable to Mr. Vasquez, there is no evidence that Danley's hostility was related to Mr. Vasquez's disability.

Mr. Vasquez also does not offer evidence that he faced increased scrutiny from Danley because of his disability. Rather, the evidence shows that Mr. Vasquez was treated the same as his coworker, Douglas. Mr. Vasquez was hired at the same time as Douglas. Dkt. 41 ¶ 3. Anderson assigned Danley to train them both. *Id.*

Mr. Vasquez explained in his deposition testimony that Danley micromanaged both him and Douglas. *See, e.g.*, Dkt. 40-1 at 23. For example, Mr. Vasquez described one frustrating incident in which he was asked to collect new computers with Douglas. *Id.* Danley told Mr. Vasquez and Douglas to "take the boxes of computers from that pallet and stack them up onto that pallet, which is a very commonsense thing to do. But she had to assert her dominance and tell us how to do it, where to put it, even though we already had instructions from our supervisor[.]" *Id.*

Mr. Vasquez also explained that Danley stood behind both him and Douglas when she trained them. *Id.* at 27–28. In his deposition, Mr. Vasquez stated:

> [Danley's] assertiveness and her bullying was not a training tool for us. It was not making us any better. She was just being very disruptive. And the condescending wa[y] she would stand behind us and tell us what to do while we are speaking with a customer and try to explain how to do our jobs. We were very proficient in what we did. She didn't have to take that role. But Mr. Anderson, our supervisor, allowed that to keep going in the workplace because she never corrected any of her actions.

*Id.*

Thus, considering the record in the light most favorable to Mr. Vasquez, the Court concludes that Mr. Vasquez has not offered any evidence to support the first requirement of a hostile work environment claim. Accordingly, the claim is dismissed.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10

B.    **Claim for Retaliation**

To establish a prima facie Section 504 retaliation claim a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004) (citation omitted).

Mr. Vasquez has satisfied the first two elements. First, Mr. Vasquez made a request for a reasonable accommodation. Dkt. 46-3 at 1; Dkt. 46-4 at 1. "Making a request for an accommodation is a protected activity." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015) (citing *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004)). Thus, the first element is met.

Second, Mr. Vasquez suffered an adverse employment action. On November 14, just five days after Mr. Vasquez made his request for accommodation, he was formally separated from DVA. Dkt. 46-5 at 1. In the retaliation context, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). DVA terminated Mr. Vasquez's employment. Dkt. 46-5. That easily satisfies the second element.

But the final element poses a more difficult question. The Ninth Circuit has recognized that in some cases "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo*, 281 F.3d at 1064–65 (citation omitted). Nevertheless, "timing alone will not show causation in all cases[.]" *Id.* at 1065 (citation omitted).

Here, Mr. Vasquez emailed Carla Wilson in the Human Resources Department on November 3. Dkt. 46-2 at 3. She responded on November 3, and copied his Human Resources Representative, McCauley, on the email. *Id.* at 1–2. Mr. Vasquez began a new chain with

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

McCauley on November 4 to inquire about submitting a request to Anderson for a reasonable accommodation. Dkt. 46-3 at 2. McCauley responded to him on November 7. *Id.* at 1.

On November 8, Anderson emailed McCauley to submit a formal separation request for Mr. Vasquez. Dkt. 41-2 at 2. Anderson provided several reasons as to why he felt separation was necessary. *Id.* Anderson planned for separation on November 14, to offer time to confer with other relevant employees. *Id.*

On November 9, Mr. Vasquez emailed both Anderson and McCauley with his accommodation request. Dkt. 46-4 at 1. Shortly after, McCauley responded that she would follow up with him that day or the next. Dkt. 46-3 at 1. The Court does not know if McCauley did so or if she ever began processing the request.

If there were some evidence from which a jury could infer that Anderson knew of Mr. Vasquez's forthcoming accommodation request when he made the separation decision, this is a scenario where "causation [could] be inferred from timing alone[.]" *Villiarimo*, 281 F.3d at 1065. Mr. Vasquez's adverse employment action—his termination—followed closely "on the heels of [his] protected activity"—the accommodation request. *Id.*; *see also* Dkt. 46-4 at 1; Dkt. 41-2 at 2; Dkt. 46-5.

But the Supreme Court has held that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). Later cases have explained that "[t]he fact that an adverse employment action occurred after a complaint was lodged is 'immaterial' when the employer was already contemplating the action." *See, e.g.*, *Handson v. Overlake Hosp. Med. Ctr.*, No. C15-1772RSL, 2017 WL 1438037, at *7 (W.D. Wash. Apr. 24, 2017) (citing *Breeden*, 532 U.S. at 268); *see also Shelley v. Bank of Am.*,

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 12

*N.A.*, No. CV-10-5124 RMP, 2011 WL 5835126, at *6 (E.D. Wash. Nov. 21, 2011) ("While proximity in time may be a factor in determining whether an employer acted with retaliatory purpose, evidence that an employer discharged an employee after it discovered that the employee filed a complaint with the EEOC is immaterial where, as here, the employer had contemplated that particular course of action prior to knowing of the complaint.") (citation omitted).

Here, Anderson's decision to separate Mr. Vasquez was made before Anderson knew of the request. Dkt. 41 ¶ 15; Dkt. 43 ¶ 8. DVA has offered evidence that McCauley did not discuss the accommodation request with Anderson before she received the November 8 separation request. Dkt. 43 ¶ 8. And she did not play any role in the separation decision. *Id.*; *see also* Dkt. 41 ¶ 14. DVA has also offered evidence that Anderson had "no knowledge of any request by [Mr.] Vasquez for a reasonable accommodation prior to [his] decision to probationary separate him." *Id.* ¶ 16.

In response, Mr. Vasquez points the Court to an October 28 email to Anderson. Dkt. 46-12. Mr. Vasquez states in the email that he feels he has met enough training goals and is prepared to begin his morning shift. *Id.* at 1. The email certainly predates Anderson's formal request to separate Mr. Vasquez. *See id.* But Mr. Vasquez does not mention or allude to his disability in the email. *Id.* Mr. Vasquez has not alleged that his need for a reasonable accommodation was discussed before he sent the email. *See id.*; *see also* Dkt. 46; Dkt. 50. In his surreply, Mr. Vasquez details only the November timeline, explaining:

> Plaintiff submitted his request for reasonable accommodation on November 9, 2022, and was terminated on November 14, 2022. This five-day window, combined with Defendant's failure to address the accommodation or conduct any investigation, raises a genuine issue of material fact. Whether Plaintiff's request influenced the final decision is a question for the jury. Moreover, Defendant has not shown that the termination decision was finalized prior to November 9.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 13

Dkt. 50 at 2. Mr. Vasquez is correct that, if Anderson had known of his request, there would be a genuine issue of material fact for the jury. But Mr. Vasquez has not offered any evidence to counter Anderson and McCauley's evidence that Anderson was unaware—an essential element of causation. *See, e.g.*, *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) ("[A]t the time [the district manager] made the decision that directly resulted in the adverse action against [one of the plaintiffs], he did not know that she had engaged in a protected activity. This breaks the requisite causal link[.]"); *Gleason v. Filter Holdings, LLC*, 737 F. Supp. 3d 1033, 1070 (D. Or. 2024) (explaining that the plaintiff needed to establish that the manager who made the decision to transfer knew of her protected activity).

Thus, there are no remaining questions of material fact as to whether DVA retaliated against Mr. Vasquez for his accommodation request. This claim is also dismissed.

## V. CONCLUSION

For these reasons, the Motion for Summary Judgment, Dkt. 39, is GRANTED. The case is DISMISSED with prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 8th day of July, 2025.

Tiffany M. Cartwright
United States District Judge